ZIMMERMANN, Trustee, and another, Respondents, vs.
WALGREEN COMPANY, Appellant.

*May 8—June 5, 1934.*

For the appellant there was a brief by *Quarles, Spence & Quarles* of Milwaukee and *Markheim & Allie* of Chicago, Illinois, attorneys, and *J. V. Quarles* of Milwaukee of counsel, and oral argument by *J. V. Quarles*.

For the respondents there was a brief by *Poss, Toelle & Schuler,* attorneys, and *Benjamin Poss* and *J. P. Brazy* of counsel, all of Milwaukee, and oral argument by *Mr. Brazy* and *Mr. Poss.*

FRITZ, J.   The plaintiff Buildings Development Company is the owner of a building erected on land occupied under a ninety-nine-year lease, with the proceeds of bonds secured by a mortgage in the form of a deed of trust, dated March 28, 1927, to Ernest Greenebaum, Jr., as trustee.   The plaintiff, Harry G. Zimmermann, is the successor, as trustee, to Greenebaum.   The defendant, Walgreen Company, occupied a store in that building under a lease from the Buildings Development Company, which is dated August 22, 1927, and is for a term ending January 31, 1949; and it was in undisturbed possession under that lease at the time of the trial.   It had paid the agreed rent up to May, 1933, and this action was brought to recover the amounts which accrued under that lease for May and June, 1933.

The mortgage to Greenebaum, as trustee, provided that in the event of default—

"it shall be lawful for the trustee or the person who may be appointed by the court to execute this trust as receiver or otherwise, forthwith (either with or without process of law), to enter upon and take immediate possession of the premises and property aforesaid, and said trustee may use, operate and manage the same, if desired, by such agents, servants, and attorneys as he may select, from time to time, at the expense of such trust estate, to preserve, manage and maintain the said premises, subject to the lien of these presents, and may pay any and all rent, taxes or assessments, and likewise from time to time, at the expense of said trust estate, may make all necessary repairs, rebuildings, or renewals thereto that may seem to said trustee to be judicious, and may receive and collect the earnings, income, profits or rents of said premises and property and all parts thereof, and may pay therefrom all proper costs, charges and expenses of so taking, holding and managing said premises

and property, including reasonable compensation for such trustee, his servants, agents and attorneys."

The Buildings Development Company defaulted in May, 1932, and Greenebaum, as trustee, commenced a foreclosure action, in which neither the Walgreen Company, nor any of the tenants occupying under leases from the Buildings Development Company, were joined as parties. In that action, by consent of the trustee and the Buildings Development Company, the court, on May 27, 1932, ordered that *pendente lite,* the Buildings Development Company—

"collect all rents, income, issues and profits from the said mortgaged premises and disburse .the same solely for the proper and necessary maintenance and operation of said mortgaged premises and the performance of said mortgagor's obligation under the above mentioned deed of trust pursuant to which said first mortgage building and leasehold gold bonds were issued, and to keep an accurate account of the same and in such form and place as to be available for examination by this court upon further order."

No further order has been entered in that action. . On October 26, 1932, the Buildings Development Company, by an indorsement on the Walgreen Company lease, assigned to Greenebaum, as trustee, all of its right, title, and interest in and to that lease and the rent thereby reserved, but the court's order of May 27, 1932, was neither vacated nor modified, and under and pursuant thereto the Buildings Development Company continued to manage the building, and collect and disburse the rents, etc. On December 15, 1932, when some of the bondholders sought by garnishment to secure a preference as to rents owing by tenants, the attorneys for Greenebaum, as trustee, by letter advised the Walgreen Company that the Buildings Development Company had assigned the lease to Greenebaum, as trustee, as collateral, and that payments of rent to the Buildings Development Company would release the Walgreen Company from all claims on the part of the trustee for payments so made. That statement that the lease was assigned as collateral is

not contradicted. On June 13, 1933, before the commencement of this action, Zimmermann, as trustee, in writing authorized the attorneys for the plaintiffs herein to represent him, as well as the Buildings Development Company, because their interests were not in conflict.

The trial court held that the defendant was liable under its lease and directed a verdict in favor of the plaintiffs for an amount which represented the rent and sundry charges payable under the terms of the lease for the premises occupied by the defendant up to the time of the commencement of this action. The judgment which was entered accordingly provides that "Zimmermann as trustee . . . and Buildings Development Company . . . do have and recover from Walgreen Company" the amount specified.

Defendant contends that its lease, and its obligations thereunder, were terminated by the trustee's taking possession of the building under title prior and paramount to that of the defendant, as lessee. In respect to that contention it must be noted at the outset that neither the trustee, nor the Buildings Development Company, ever actually occupied or attempted to take actual possession of the leased premises to the exclusion of the defendant herein. On the one hand, the Buildings Development Company, as conservator of the building and the income therefrom, by virtue of the court's order of May 27, 1932, in the foreclosure action, or, on the other hand, the trustee, as assignee of the lease, merely became intrusted, for the purpose of operating the building and conserving the income to pay the Buildings Development Company's obligations under the trust deed, with such constructive possession as had been vested theretofore in the Buildings Development Company, as the landlord of the defendant. Neither the court's order, nor the assignment of the lease as collateral, deprived the Buildings Development Company, as mortgagor, of its legal title under its ninety-nine-year leasehold, or enlarged the landlord's rights, in view of the lease held by the defendant, from mere constructive

possession to actual possession, so as to deprive the defendant, as lessee under the Buildings Development Company,.of its right under its lease to continue in the actual possession of the premises described in that lease.

It is the settled law of this state that the legal title and right of possession does not vest in the mortgagee, but continues in the mortgagor until terminated by a sale on foreclosure, or by contract between the parties, and that even when a receiver is appointed in a foreclosure action to prevent waste, the collected rents and income of the mortgaged land do not belong to the mortgagee or to the receiver, but they are conserved and applied on the mortgage debt for the mortgagor's benefit.   Likewise, as is stated in a note in 14 A. L. R. 664:

"Whether a lease of real estate previously mortgaged is terminated by a foreclosure action and sale is held by the majority of the decisions to depend on the joinder of the lessee as a party to the foreclosure action;"

and it has been held in a number of cases that such termination does not occur until the premises are actually sold on foreclosure in such action.  See *Prudence Co. v. 160 West Seventy-third St. Corp.* 260 N. Y. 205, 183 N. E. 365; *Metropolitan L. Ins. Co. v. Childs Co.* 230 N. Y. 285, 130 N. E. 295; *Bushe v. Wolff,* 171 N. Y. Supp. 253; *Greenwald v. Schustek,* 169 N. Y. Supp. 98; *Ellveeay Newspaper Workers' B. & L. Asso. v. Wagner Market Co.* 110 N. J. Law, 577, 166 Atl. 332, 112 N. J. Law, 88, 169 Atl. 692; *Virges v. Gregory Co.* 97 Wash. 333, 166 Pac. 610.

The decisions of this court, upon which the defendant relies on this appeal are not inconsistent with the conclusions stated above.   The statement by Mr. Justice Downer in *Mariner v. Chamberlain,* 21 Wis. \*251, \*254, on which defendant relies, that—

"The order of a court of equity appointing a receiver and requiring a tenant to deliver possession to him, when he takes possession under it, as effectually ousts the tenant dur-

ing the possession of the receiver, as the execution of a writ of possession on a judgment at law; and the same effect must be given to it as a protection or defense to the tenant in an action by his landlord for rent accruing during such possession of the receiver,"

was proper and correct in so far as it was applicable to the federal court order and the facts in that case. However, it must be noted that the federal court order appointing a receiver, to which Mr. Justice Downer was referring, was not being reviewed by this court, and that Mr. Justice Downer did not say that that order was correct in point of law; or that, if it had been reviewed on appeal, instead of the tenant surrendering possession thereunder, it would have been held valid and effectual to oust the tenant during the unexpired period of the lease, under which he was not in default. That federal court order was made in an action to foreclose a mortgage given by Mariner before he gave a lease to Chamberlain, and both Mariner and Chamberlain were parties in that action. Neither moved to have that order vacated, but Chamberlain, with the knowledge of Mariner, surrendered possession to the receiver pursuant to that order. Subsequently, Mariner sued Chamberlain in the state court for the rent for the unexpired term of the lease and it was on an appeal in that action that Mr. Justice Downer made the statement quoted above. However, in that connection this court then rightly held that, as Mariner was a party to the foreclosure action, and knew the effect of the order appointing the receiver, and did not move to vacate it, although it was incumbent on him to protect his tenant in his possession and rights under the lease, Mariner was estopped from denying the validity of the order, unless it was made with Chamberlain's consent, which it was not. If anything, the opinion indicates that the federal court order was invalid, but, as Mariner failed to have it vacated and to protect his tenant in his possession, Mariner was bound thereby, even though neither the receiver nor the mortgagee was law-

fully entitled to possession. In view of those facts that case is readily distinguishable and affords no precedent in support of the contentions of the defendant herein.

In the case of *Gaynor v. Blewett,* 82 Wis. 313, 52 N. W. 313, a *lis pendens* was filed May 26, 1887, in an action to foreclose a mortgage. A judgment to that effect was entered in May, 1891, and a receiver was then appointed. On January 1, 1891, during the pendency of the action, one Smith had entered into possession as a tenant under the mortgagor under a lease for one year and had paid that year's rent in advance. He refused to pay rent or to yield possession to the receiver. On an appeal this court held that the receiver was entitled to a reasonable rental, or the possession, because, as Mr. Justice PINNEY said, Smith—

"stands in the position of a purchaser or lessee *pendente lite* from the mortgagor defendant, and had constructive notice of the action to foreclose by the filing of the notice of *lis pendens,* and took subject to whatever order or decree the court might lawfully make affecting either the title or possession."

However, in Mr. Justice PINNEY's opinion there are also the following statements upon which the defendant herein now relies, to wit:

"So far as the possession of the premises is concerned, the appointment of the receiver had the effect of an equitable ejectment. Were this otherwise, the beneficial results of a receivership could be easily defeated by giving a lease of the premises in question long enough to last during the probable duration of the litigation, and by collecting the rent in advance. The receiver, on his appointment, became entitled, as against the appellants, to the possession and use of the premises, and his rights are in no way affected by the provisions of the lease and payment in advance of rent to thereafter accrue under it."

Those statements were correct as applied to Smith, whose right to possession, in view of the *lis pendens* filed before he

leased and paid, was subordinate to any order thereafter made in the pending action; but those statements were not made in reference to, and are not applicable to a tenant's right to continue in possession *pendente lite* under a lease which he had made, without collusion, before an action to foreclose was commenced and under which he was not in default. On the contrary, as was held in *Grether v. Nick*, 193 Wis. 503, 213 N. W. 304, 215 N. W. 571, under such a lease the tenant's right to possession does not terminate and he cannot be compelled to again pay rent, honestly paid in advance to the landlord, merely because a receiver was appointed in a foreclosure action commenced after the lease was made and the rent paid. In that case the mortgagor, subsequent to mortgaging the premises, leased the property, and received two years' rent in advance, which was used to complete the building. Upon foreclosure, a receiver was appointed to take possession of the property and collect rent therefor from the time of his appointment. That order was reversed on appeal and, as the decision in *Gaynor v. Blewett, supra,* was relied upon to sustain that order, this court then said in relation to that decision :

"It was held that the tenant stood in the position of a purchaser or lessee *pendente lite* and that he took subject to whatever order or decree the court might lawfully make affecting either the title or possession. The decision in that case is carefully grounded upon that fact. . . . The *Blewett Case* is no authority for the order here under consideration, and we can discover no principle or moral consideration which justifies the extension of the doctrine of the *Blewett Case* to the facts here involved."

That statement was not modified although a rehearing was granted, which was followed by an opinion in which this court said :

"In jurisdictions where the mortgagor retains the legal title and right of possession, as here, it follows that the right to collect rents and profits remains in the mortgagor until he

is deprived of possession in the manner provided by law, and this notwithstanding the fact that the mortgage may pledge the rents and profits. This must be true unless the clause pledging rents and profits should be construed as sufficient to pass the legal title and right of possession to the mortgagee. This has never been held in any jurisdiction, and should not be, as it would afford an easy way of evading the policy of our statutes which makes a mortgage a mere lien upon land, leaving the legal title and right of possession in the mortgagor. It is plain in this jurisdiction that under a mortgage pledging rents and profits the benefit of such rents and profits does not inure to the mortgagee until possession has passed from the mortgagor."

Then in *Ottman v. Tilbury,* 204 Wis. 56, 234 N. W. 325, we held that the lessee of the premises mortgaged prior to his lease, who had in good faith paid a year's rent in advance before the mortgage had become due, could not be disturbed in possession upon the subsequent commencement of a foreclosure action and the appointment of a receiver therein. The following statements in the opinion filed in that connection are applicable and of controlling significance in the case at bar, to wit:

"The transaction by which he leased the premises and paid one year's rent in advance amounted to a purchase by him of a leasehold interest in the premises. This interest was subject to the mortgage, which was not at that time in process of foreclosure. He was chargeable with knowledge that the mortgage might be foreclosed and that his leasehold interest might be terminated by a foreclosure sale. However, he knew that under the statutes such sale could not take place within a year from the date of the judgment. It was held in the original opinion in *Grether v. Nick* . . . that one who acquires an interest in premises in the nature of a leasehold by paying his rent in advance cannot be required to pay it a second time to the receiver. A necessary corollary to that proposition is, that *neither can he be disturbed in his possession as lessee.*"

"It does not necessarily follow that because a receiver was appointed the appellant should be ousted from the premises. The receiver now becomes the appellant's landlord with all

of the powers usually possessed by landlords in such cases. . . . It is often assumed that the purpose for which a receiver is appointed in foreclosure proceedings is to collect the rents and profits and thus add to the security of the mortgage. This assumption places 'the cart before the horse.' The object is to prevent the commission of waste, to accomplish which the receiver is invested with the possession of the premises. As an incident merely of possession he is entitled to collect the rents and profits. Such rents and profits, however, when collected belong neither to the mortgagee nor to the receiver. They belong to the mortgagor, and the court disposes of them by applying them upon the mortgage debt."

Those decisions are wholly consistent with and fully recognize the following propositions: The mortgagor's right to the possession of the mortgaged premises continues in him and his lessee until terminated by the sale on foreclosure, subject only to the appointment of a receiver in the foreclosure action for the purpose of preventing waste; notwithstanding an assignment of rents by the mortgagor to the mortgagee as collateral security, or an appointment of a receiver to function as the landlord in lieu of the mortgagor-lessor, the lessee is entitled to continue in possession until the landlord's right of possession, which he acquired by virtue of his lease, is terminated by the sale on foreclosure; and it is because the mortgagor's right to possession and the rents and profits is not terminated, until cut off by the foreclosure sale, that the net rents and profits collected up to the time of the sale by the receiver do not belong to the mortgagee, or to the receiver, but they are to be applied on the deficiency judgment, if any is entered on the mortgage debt, and if there is none they belong to the mortgagor.

The defendant also relies on the decision in *Schroeder v. Arcade Theater Co.* 175 Wis. 79, 118, 184 N. W. 542, in which there is quoted the following statement made in *Gartside v. Outley,* 58 Ill. 210, 214, to wit:

"It is in the power of the mortgagee, on entry for conditions broken, where the property has been leased subsequent

to the making of a mortgage, to treat the tenant as a trespasser and bring ejectment, even without notice, or the mortgagee may elect to recognize the lessee as his tenant."

In so far as that statement is to the effect that the mortgagee may on mere entry for breach of mortgage conditions terminate the tenant's term and dispossess him although he is not in default, it is in conflict with the decisions in *Grether v. Nick, supra,* and *Ottman v. Tilbury, supra.* However, in *Schroeder v. Arcade Theater Co., supra,* the ultimate conclusion in that respect was that by the trustee's taking possession and collecting rents from the tenants, including the Theater Company, followed by the foreclosure, he had made manifest his intention of not treating the Theater Company as a trespasser, but "of treating it as his new tenant under a lease to expire *upon the sale* of the property under forclosure proceedings." Consequently, under that decision, it was the *sale on foreclosure* that was held to terminate the Theater Company's possession as tenant, and that possession was not considered terminated by the trustee's merely succeeding the landlord in possession and collecting the rents, or by the mere commencement of a foreclosure action.

The defendant also assigns as error the court's rulings which excluded evidence offered by the defendant as to the arrangements and circumstances under which the trustee had taken possession of the mortgaged premises, and thereafter occupied and operated the building. It was established without dispute that, as stated above, neither the trustee, nor the Buildings Development Company, has ever occupied, or interfered with the actual possession of the premises leased by the Walgreen Company; and also that the latter has not been excluded therefrom in any respect. The court's order appointing the Buildings Development Company to collect and conserve the rents, and the assignment of the lease and rents to the trustee, and the operation and management of the building thereafter by the Buildings Development Company

under the court's order, or by the trustee under the assignment of rents, were not in derogation of the rights of tenants of the Buildings Development Company to continue in actual and undisturbed possession, but all of those matters facilitated the proper performance of all of the landlord's obligations under the lease toward the defendant as a tenant. In this case, as in the *Arcade Theater Co. Case,* there was no act or conduct on the part of the trustee, or the Buildings Development Company, as conservator under the court's order in the foreclosure action, which manifested any intention to treat the defendant either as a trespasser, or otherwise than as a tenant under its written lease. In fact, there has been nothing to indicate any intention on the part of the trustee, or of the Buildings Development Company, that the defendant's possession under its lease is to be terminated even upon a sale in the foreclosure action. Consequently, all of the offered proof as to what was done to enable the trustee to succeed to the lessor's rights to collect rents and to control the management and operation of the building, and in the performance of the lessor's rights and obligations toward its tenants, including the defendant, was immaterial, and no error was committed in excluding that proof.

The defendant further contends that, as the Buildings Development Company assigned the lease and the rents accruing thereunder to the trustee, and as the defendant has been notified of that assignment, the Buildings Development Company cannot bring this action without being authorized by the assignee to do so. Undisputed evidence shows that Zimmermann, as trustee, authorized the attorneys who appeared for the plaintiffs in this action to represent the trustee in suing the Walgreen Company, because the interests of the trustee and the Buildings Development Company were not in conflict; and it is alleged in the complaint that Zimmermann, as trustee, joins as a party plaintiff for the purpose of fully protecting the rights of the defendant in making payment of

the amounts which it owes under the lease. The Buildings Development Company was appointed and authorized by the court's order in the foreclosure action to collect the rents and disburse them solely for the operation of the building and the performance of the mortgagor's obligations under the deed of trust. That order has never been modified and still controls as to the relative rights and duties of the trustee and the Buildings Development Company. Their status and rights in respect to the subject-matter and scope of that order were not affected by the Buildings Development Company's subsequent assignment of the Walgreen Company lease to the trustee as collateral security. As conservator of the rents under the court order, the Buildings Development Company was empowered, to enable it to properly perform its duties under that order, to collect the rents, and maintain an action, if necessary, to recover them. Furthermore, as pledgor of the lease and rents, by the assignment thereof as collateral security, the Buildings Development Company was also entitled to maintain this action, with the consent of the trustee, as pledgee. *Walmer v. First Acceptance Co.* 192 Wis. 300, 306, 212 N. W. 638, 65 A. L. R. 1323.

On the other hand, the trustee by reason of his interests under the court's order, and also under the assignment, as collateral, was certainly a proper party plaintiff; and in order to protect the Walgreen Company, he was probably even a necessary party to this action. At all events, the evidence certainly warranted the court's conclusions and judgment that the plaintiffs, Zimmermann, as trustee, and the Buildings Development Company, have and recover from the defendant the accrued rent and sundry charges which had become due and payable under the lease. The defendant is liable for those charges, and it is fully protected in paying them pursuant to that judgment, regardless of whether Zimmermann, as trustee, or the Buildings Development Company, as conservator or as pledgor, should alone have sued as

the plaintiff, or whether it was proper to have them join as plaintiffs. Although the judgment does not determine who, as between Zimmermann, as trustee, and the Buildings Development Company, is ultimately entitled to the rent, the defendant is not prejudiced by the omission to decide that question in this action. On the contrary, that issue can be determined by the court in the foreclosure action in which the Buildings Development Company was appointed as conservator, without any concern or participation on the part of the defendant herein.

*By the Court.*—Judgment affirmed.